FILED
JUL 0 2 2013

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| LARRY ALEXANDER, M.D., | \* | CIV 12-1012 |
| Plaintiff, | \* | |
| -vs.- | \* | MEMORANDUM OPINION AND ORDER |
| AVERA ST. LUKE'S HOSPITAL, | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff filed a complaint contending that defendant terminated his employment on August 11, 2011, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the South Dakota Human Relations Act, SDCL 20-13-10, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2617 *et seq.* Defendant filed a motion for summary judgment, contending that plaintiff was not an employee of the defendant within the meaning of those statutes. Plaintiff filed a cross-motion for summary judgment seeking a ruling that he was an employee.

## DECISION

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Knutson v. Schwan's Home Service, Inc., 711 F.3d 911, 913 (8th Cir. 2013). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law. " Grey v. City of Oak Grove, Mo., 396 F.3d 1031, 1034 (8th Cir. 2005).

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995).

In considering the defendant's motion for summary judgment, this Court must view the facts in the light most favorable to plaintiff and give plaintiff the benefit of all reasonable inferences that can be drawn from the facts. Donaho, 74 F.3d at 897-98. The ultimate issue of whether plaintiff was an employee or an independent contractor is one of law, Kramer v. Cash Link Systems, 715 F.3d 1082, 1088 (8th Cir. 2013), which may properly be resolved by summary judgment but only where there is no genuine issue of material fact. Lerohl v. Friends of Minn. Sinfonia, 322 F.3d 486, 488 (8th Cir. 2003).

The ADA defines "employee" as "an individual employed by an employer." 42 U.S.C § 12111(4). The ADEA likewise defines "employee" as "an individual employed by any employer." 29 U.S.C. § 630(f). The FMLA, 29 U.S.C. § 2611(3), defers to the definition of "employee" set forth in the Fair Labor Standards Act, that is, "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Finally, the South Dakota Human Relations Act defines employee as "any person who performs services for any employer for compensation, whether in the form of wages, salary, commission, or otherwise." SDCL 20-13-1(6). The United States Court of Appeals for the Eighth Circuit has described the federal definition of "employee" as "completely circular and explains nothing." Schwieger v. Farm Bureau Ins. Co. of Nebraska, 207 F.3d 480, 483 (8th Cir. 2000). Schwieger discussed the definition of "employee" in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(f). The South Dakota Supreme Court recognizes that

"Title VII of the Civil Rights Act of 1964 [is] the federal counterpart of the South Dakota Human Relations Act of 1972." Devericks v. John Morell & Co., 297 NW2d 325, 327 (S.D. 1980).

The Eighth Circuit has pointed out that where, as here, the relevant statutes do not provide specific guidance on the meaning of the term "employee," the courts apply "the general common law of agency to determine whether a hired party is an employee or an independent contractor." Lerohl v. Friends of Minnesota Sinfonia, 322 F.3d at 489.

> "Where Congress uses terms that have accumulated settled meaning under
> . . . the common law, a court must infer, unless the statute otherwise
> dictates, that Congress means to incorporate the established meaning of
> these terms. . . . In the past, when Congress has used the term 'employee'
> without defining it, we have concluded that Congress intended to describe
> the conventional master-servant relationship as understood by common-law
> agency doctrine.

Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-23, 112 S.Ct. 1344, 1348, 117 L.Ed.2d 581 (1992). The courts adopt the common-law test "derived primarily from the Restatement (Second) of Agency § 220(2) (1958), and summarized in Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751–52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)." Ernster v. Lusco, Inc., 596 F.3d 1000, 1003 (8th Cir. 2010).

> In determining whether a hired party is an employee under the general
> common law of agency, we consider the hiring party's right to control the
> manner and means by which the product is accomplished. Among the other
> factors relevant to this inquiry are the skill required; the source of the
> instrumentalities and tools; the location of the work; the duration of the
> relationship between the parties; whether the hiring party has the right to
> assign additional projects to the hired party; the extent of the hired party's
> discretion over when and how long to work; the method of payment; the
> hired party's role in hiring and paying assistants; whether the work is part of
> the regular business of the hiring party; whether the hiring party is in
> business; the provision of employee benefits; and the tax treatment of the
> hired party.

Ernster v. Luxco, Inc., 596 F.3d at 1003-04 (*quoting* Community for Creative Non-Violence v. Reid, *supra*.) and Kramer v. Cash Link Systems, 715 F.3d at 1087 (*quoting* Darden, 503 U.S. at 323–24, 112 S.Ct. 1344).

The foregoing tests for determining employee status are now known as the Darden factors. "'No single factor is determinative, and courts should consider 'all aspects of the working relationship. But the first factor—whether the hiring party has the right to control the means of

performance—is a 'primary consideration.'" Kramer v. Cash Link Systems, 715 F.3d at 1088. The issue of control is less useful in a case involving physicians "because a hospital 'must assert a degree of conflicting control over every doctor's work . . . to discharge its own professional responsibility to patients,' regardless whether the physician is an employee or independent contractor." Glascock v. Linn County Emergency Medicine, PC, 698 F.3d 695, 698 (8th Cir. 2012) (*quoting* Cilecek v. Inova Health Sys. Servs., 115 F.3d 256, 260 (4th Cir. 1997)). The Eighth Circuit "has deemed the issue of control 'inconclusive' elsewhere even when the hiring party provided training courses, urged its workers to keep regular business hours, and regularly reviewed its workers' 'profitability, dress, and attitude.'" Glascock, *supra*, (*quoting* Schwieger, 207 F.3d at 484–85). Clearly, as a matter of fact and law, Avera retained no control over Dr. Alexander's medical judgments.

At the outset I would note that the most recent contract a well as all previous contracts between the parties defines Dr. Alexander as an independent contractor. "The existence of a contract referring to a party as an independent contractor does not end the inquiry, because an employer 'may not avoid [the ADEA] by affixing a label to a person that does not capture the substance of the employment relationship.'" Schwieger v. Farm Bureau, 207 F.3d at 483 (*quoting* Devine v. Stone, Leyton & Gershman, P.C., 100 F.3d 78, 81 (8th Cir.1996)). It is thus necessary to consider the *Darden* factors.

> Turning to the Darden factors, we have not required any precise number of factors to create a genuine issue of material fact as to whether a hired party is an employee or an independent contractor. Merely showing "some aspects [that] suggest an employment relationship" is insufficient to survive summary judgment, however. *Schwieger*, 207 F.3d at 487. We have previously concluded that a hired party was an independent contractor as a matter of law when five Darden factors favored that status, two "weighed slightly toward" it, two "appeared evenly balanced," and three favored employee status. *Id.* at 486.

Glascock v. Linn County Emergency Medicine, PC, 698 F.3d at 698-99.

**1. Degree of Skill.**

Naturally, being a pathologist requires a great deal of skill. Dr. Alexander concedes this factor. Independent contractors typically provide a service that necessitates a high degree of skill. This factor weighs in favor of Avera. Nevertheless, in a medical setting, this factor should be given little weight. Since other physicians who are hospital employees are also highly-skilled,

4

it cannot create a distinction of more than slight weight between an employee and an independent contractor.

## 2. The source of the instrumentalities and tools.

The professional services contracts between Avera and Dr. Alexander required Avera to make available "such equipment and supplies as are reasonably required for the proper operation and conduct of the department." Avera must also "keep and maintain the equipment in good order and repair, as well as furnish the department with utilities and with such ordinary housekeeping, laundry, and other services as may be required for the proper operation and conduct of the department." The plaintiff contends this is a significant factor in determining the relationship. The defendant contends "the use of hospital instruments is not a reliable indicator of employee status." Cilecek v. Inova Health Systems Services, 115 F.3d 256, 262 (4th Cir. 2006). The Fourth Circuit's *Cilecek* decision has been cited favorably by the Eighth Circuit in *Glascock, supra*. Although this factor weighs in favor of Dr. Alexander, a hospital provides the medical equipment for all staff, regardless of status. "When a physician shows up to work in today's world - either as an independent contractor or a full-fledged employee - he no longer is likely to carry all relevant medical instruments in a black satchel. Instead, it is expected that he will make full use of the hospital's physical facilities during the course of his service." Tsosie v. United States, 452 F.3d 1161, 1164 (10th Cir. 2006).

While typically this factor would be given substantial consideration, it is not relevant in settings where the instruments and tools are provided out of necessity as to all medical staff members. As a result, this factor should not be regarded as determinative in deciding whether Dr. Alexander was an employee.

## 3. The location of work.

Dr. Alexander performed his duties inside the hospital. However, this factor is also not relevant in the medical setting because all pathology staff, regardless of working status, must work inside the hospital. At Avera, the pathology department works alongside and with the surgery department.

### 4. The duration of the relationship between the parties.

Dr. Alexander had a professional relationship with Avera for close to twenty years. Avera concedes this supports Dr. Alexander's assertion of employment. The defendant contends this should not be a major factor because contractual relationships can last just as long as employment relationships. It is undisputed that Dr. Alexander and Avera entered into a significant number of contracts with very similar provisions.

### 5. Whether the hiring party has the right to assign additional projects to the hired party.

In the deposition of Dr. Alexander, he was asked, "Were you ever assigned any additional duties beyond what's (sic) in the contract that you recall?" He replied, "No." Dr. Alexander asserts that by having to follow the bylaws, credentialing manual, and regulations for the medical staff, he was subjected to additional projects. However, the requirements applied to all medical staff of Avera, not just employees. While Dr. Alexander's agreement with Avera had conditions in his agreement that did not apply directly to pathology, he was not required to perform additional projects within the Pathology Department. To be considered an "additional project," the project would need to apply to Dr. Alexander specifically. Conditions in an agreement applying to all medical staff of Avera cannot be enough to claim Avera is controlling the manner and means of carrying out one's duties.

This factor is relevant because Avera has the right to assign additional projects to its pathologists who are employees. In an Avera employment contract with a pathologist, the pathologist is required "to devote on a full time basis, physician's skill, labor and attention to physician's medical practice." Dr. Alexander's contract expressly lists his responsibilities, such as, "prompt performance of adequate examinations in the fields of anatomic pathology, hematology, chemistry, microbiology . . ." Avera's contracts with employees do not contain a list of responsibilities similar to Dr. Alexander's agreement. This is because an employed pathologist makes a broad promise to devote the necessary skill to anything relating to medical practice. By the parties explicitly listing all of Dr. Alexander's responsibilities, there is reason to conclude that both parties had knowledge that Dr. Alexander was an independent contractor, and Avera had no right to assign additional projects outside of the contract.

The fact that Avera did not assign additional projects throughout its relationship with Dr. Alexander is further proof that Dr. Alexander was an independent contractor. This factor favors Avera, and is relevant because there is a distinction in treatment between Dr. Alexander and physicians who are employees.

### 6. The extent of the hired party's discretion over when and how long to work.

Dr. Alexander's initial contract with Avera stated, "It is anticipated that Alexander will provide services for approximately 2,080 work hours per annum." When he was appointed as the Director of Pathology, he was required to spend 1,352 work hours towards "administrative or supervisory services in the department." Dr. Alexander claims this requirement is sufficient to be considered "control." Also, Dr. Alexander believes he did have a daily hour requirement because he would have to be available whenever the surgery department was operating. This was usually from 7:00-7:30 A.M. until 3:30-4:00 P.M. Beginning July 1, 2002, there was no annual hours requirement in any subsequent agreements between Avera and Dr. Alexander.

Avera's employment contract with the current pathologist devotes a paragraph to "Daily Employment Work Requirements" and explicitly requires forty hours per week. This is significant because Avera's employment contract, and the manner it treats its employees is distinguishable from Dr. Alexander's contract, and the way he was treated. While Dr. Alexander needed to be available when the surgery department was operating, he did not have the strict requirement of forty hours per week. It is also important to note that this "time restriction" only applied when Dr. Alexander was responsible for anatomic pathology, which was shared with Dr. Burt. Since Dr. Alexander's contract lacked the same restrictions place on an employed physician, this factor weighs in favor of Avera. If there was no surgery during a given time period, Dr. Alexander had no obligation to be present.

### 7. Method of Payment.

In 1991, Dr. Roy Burt had a contract with Avera to provide pathology services at Avera as the medical director of the pathology department. Dr. Burt entered into a "contract for professional services" with Dr. Alexander "for the purpose of assisting Burt to fulfill his requirement of providing the total pathology needs" of Avera. Avera was not a party to that contract. Dr. Alexander was paid by Dr. Burt, not by Avera. The agreement between Dr. Burt

7

and Dr. Alexander specifically provided that Dr. Alexander was rendering professional services as an independent contractor and not as an employee of Dr. Burt. The parties agreed that Dr. Burt would not withhold on Dr. Alexander's behalf for federal income taxes or social security taxes.

In December 1994, Dr. Alexander became the medical director of the pathology department and entered into his first "agreement for pathology services" with Avera. Dr. Alexander's initial agreement with Avera provided that Avera would compensate Dr. Alexander a yearly fee paid in monthly installments. Dr. Alexander was required to pay for the services of Dr. Burt and any substitute pathologists. The agreement between Avera and Dr. Alexander specifically provided that Dr. Alexander was rendering professional services as an independent contractor and not as an employee of Avera. The parties agreed that Avera would not withhold on Dr. Alexander's behalf for federal income taxes or social security taxes. All subsequent agreements between Avera and Dr. Alexander also provided that Dr. Alexander would be compensated by a yearly fee paid in monthly installments, that Dr. Alexander was responsible for paying for any other assistant or substitute pathologists, and that Dr. Alexander was solely responsible for paying withholding and social security taxes.

Avera's employment contract with its current pathologist also gives him an annual salary. However, the method in which he is paid is different. His contract states: "Physician shall be paid in equal installments every two weeks. Said salary shall be subject to deductions for federal income tax and FICA payments as well as any other withholdings pursuant to any law requirements." Such language does not exist in any of the agreements Dr. Alexander entered into with Avera.

This is a relevant factor in determining Dr. Alexander's relationship because his agreement and treatment is distinct from that of the employed pathologist. It reinforces Avera's intent to have Dr. Alexander as an independent contractor. It also demonstrates what Avera would have done had they wished Dr. Alexander to be an employee. With such differences in the manner in which they were paid, this factor favors Avera.

### 8. The hired party's role in hiring and paying assistants.

In every agreement made between Dr. Alexander and Avera, he was responsible for obtaining and paying any extra staff needed to make the Pathology Department function smoothly. This includes any substitute pathologists and assistants. Each agreement has the condition that if Dr. Alexander "subcontracts services more than $10,000 over twelve months, the organization has to present books, documents, and records of such related organization which are necessary to verify the nature and extent of costs incurred under such subcontract." Dr. Alexander had the right to hire an assistant and did so from 2008 to 2010. Dr. Alexander's wife, his hired assistant, was paid $115,000 in wages over the course of this arrangement. Each year, he listed her salary as a business expense on his Schedule C income tax form. Moreover, Dr. Alexander provided medical insurance for her. This factor plays a significant role, as this is a benefit unique to the independent contractor relationship. A pathologist who was an employee would be unable to do this. Dr. Alexander also took federal tax deductions that would not be authorized for an employee. He could take such deductions only if he was an independent contractor. Enjoying an exclusive benefit of the independent contractor relationship makes this factor weigh heavily in support of Avera.

### 9. Whether the work is part of the regular business of the hiring party.

Neither party addresses this factor as relevant and it does not have a role in this analysis.

### 10. Whether the hiring party is in business.

This factor is not addressed by either party and can be disregarded, as this factor is not helpful in determining the parties' relationship to one another. This factor makes little sense to me. Of course, Avera was and is in "business." It seems to me that the inquiry should be whether Dr. Alexander was "in business." Employees are not "in business" and render services only to the employer. An employee may, of course, hold more than one job but not in competition with the employer. While pathology services are not provided out of a vehicle or in a storefront, there is some significance to the fact that Dr. Alexander performed pathology services for a state agency for separate compensation paid to him.

## 11. The provision of employee benefits.

Dr. Alexander received no benefits generally provided for an employee. He was responsible for paying malpractice liability insurance, health insurance, self-employment tax, federal income tax (including quarterly estimated income tax payments since nothing was being withheld by Avera), and social security and medicare taxes. His agreements did not provide health, dental, life, or disability insurance, nor any retirement or pension benefits.

In the current pathologist's employment contract, Avera agrees to maintain "malpractice liability insurance of one million dollars and three million dollars annual aggregate." The contract also includes a "Covenant Not to Compete Clause," where the doctor agrees to not enter into competition with the hospital for two years after the termination of the agreement. In the employment contract, the hospital "shall have the right to procure, at hospital's sole expense, life insurance and/or (sic) disability insurance on physician during the term of this agreement." There is also an "Investor Prohibition Clause," barring any opportunity to invest either directly or indirectly in a hospital or surgery center. Moreover an employee enjoys "Fringe Benefits," including medical, dental, life, disability, long-term disability, and long-term care insurance, ability to invest in a College 529 Plan, 403(b) Retirement Plan, and other retirement plans.

Dr. Alexander contends he received benefits such as vaccinations, discount movie tickets, and credit union membership. However, these benefits were available to every member of the Avera medical staff, including doctors who were not employees but had staff privileges. The credit union membership is available to anyone living in Brown County. In order for Dr. Alexander to show he received benefits sufficient to confer an employment relationship, he would need to have enjoyed benefits unique to the employment relationship.

In fact, Dr. Alexander enjoyed benefits unique to the independent contractor relationship, such as the right to hire his wife as an assistant, being able to practice pathology with two different organizations simultaneously, and the opportunity to invest in a surgery center or for profit hospital. These factors weigh heavily in favor of Avera because we know how Dr. Alexander would have been treated had he been an employee. Such consistency from both parties shows there was a mutual understanding that Dr. Alexander was an independent contractor.

**12. The tax treatment of the hired party.**

From the beginning of the parties' relationship, both Avera and Dr. Alexander treated their business relationship as an independent contract for tax purposes. All of the tax returns filed by Dr. Alexander included his income from Avera on a Schedule C (1040 form), which applies to a sole proprietorship. Each year, he listed expenses for contract labor for substitute pathologists as well as self-employment tax, travel expenses, and advertising expenses. Nothing in the record of tax treatment indicates Dr. Alexander was employed by Avera. In order for this factor to support Dr. Alexander, he would have had to receive a W-2 form which would list all of the withholdings from his gross income. This factor supports Avera's position that Dr. Alexander was an independent contractor. This is also a significant factor because it reinforces that both parties understood their agreement. Dr. Alexander obviously made the decision each year as to what tax forms to file.

**13. Conflict resolution between Dr. Alexander and Dr. Burt indicates both were independent contractors.**

During the feud between Dr. Alexander and Dr. Burt, Avera responded by delegating the issue to the Medical Executive Committee, which is comprised of members of the medical staff of Avera. To resolve the dispute, the committee decided to have the medical staff pay for a psychiatrist to counsel both doctors. The record reveals that, if the two doctors were employees of Avera, they would not have resolved their dispute through the Medical Executive Committee. Employees of Avera resolve internal disputes through administrative and human resource channels. This is an example where Avera would have benefitted from the two doctors being employees but, since they were independent contractors, Avera believed its only option was to resolve the dispute via the Medical Executive Committee. Although this is not a factor listed in *Darden*, it is relevant in examining the totality of the working relationship. It creates a distinction in treatment between the two different classifications.

## CONCLUSION

Applying the relevant *Darden* factors to the undisputed material facts, Dr. Alexander was an independent contractor for Avera. The relevant factors that influenced this finding created a distinction in treatment between employees and independent contractors within the hospital. The

11

tax treatment, benefits, right to assign additional projects, role in hiring assistants, method of payment, and discretion over how long to work were given substantial weight in this conclusion. Both parties were given sufficient information and knowledge of the relationship and each party was consistent in treating the relationship as an independent contractor relationship. I cannot imagine a clearer case of "course of dealing." To quote an old saying, actions speak louder than words. The undisputed material facts show that Dr. Alexander was an independent contractor and Avera is entitled to summary judgment as a matter of law. No reasonable jury could find that the relationship was that of employer-employee. Plaintiff's motions should be denied. I conducted an *in camera* review of the discovery materials sought. They are not relevant or material. There also has been no waiver of any attorney client relationship.

## ORDER

Now, therefore,

IT IS ORDERED:

1. Defendant's motion, Doc. 23, for summary judgment is granted.
2. Plaintiff's motion, Doc. 32, for summary judgment is denied.
3. Plaintiff's motion, Doc. 29, to compel discovery is denied.

Dated this 2nd day of July, 2013.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY:
DEPUTY
(SEAL)